ROBSON *v.* THE STATE OF GEORGIA.

1. Indictment against a tax-collector under §4421 of the code, for embezzlement, alleging that the money embezzled was collected by him officially from the tax-payers of the county, sufficiently charges that the money was in his possession, custody and control at the time of the act of embezzlement.

2. Overruling a demurrer to the indictment is matter for direct exception, not for the motion for a new trial.   And time runs against direct exception from the date of the trial, or from the adjournment of that term of the court, not from the date of denying the motion for a new trial.

3. After the accused has in open court discharged certain of his witnesses from attendance, he cannot, at the same term, obtain a continuance for the absence of one of these discharged witnesses.

4. All existing grounds for continuance are to be embraced in one and the same motion.   After the motion has been overruled, it is no abuse of discretion not to hear a second motion on a known ground (such as the absence of one of defendant's counsel), which might have been included in the original motion, but was not.

5. After some of the jurors to try a felony have been selected, and whilst the court is waiting upon the bailiffs to bring in a new panel, it is not error to proceed with other business, the selected jurors taking no part therein, but being sent out of the court-room and properly confined elsewhere.

6. Whilst the trial of a felony is in progress, the court may deal with witnesses of the accused for contempt, and hear their excuses for failure to attend promptly in obedience to process. Certainly this may be done during an interval when the jury are not present, the accused not intimating any objection, and his counsel expressly consenting.

7. The offence of embezzlement by a public officer is not the less punishable because the sureties upon his official bond have responded to the State for his default, and he has reimbursed them for so doing, though he be not indicted until afterwards. It follows that a note executed as a part of the settlement between him and his sureties is irrelevant evidence.

8. Unless it appear affirmatively to the contrary, the embezzlement of public money by a tax-collector is to be taken as committed in the county of which he is an officer, if committed at all.

9. When one on trial for a felony is at large on bond, and is voluntarily absent when the verdict is returned, the verdict may nevertheless be received and published, especially if his counsel makes an express waiver of the client's right to be present.

10. The verdict was not contrary to evidence or to law.

April 22, 1889.

Indictment. Criminal law. Taxes. Officers. Practice. Demurrer. New trial. Continuance. Jury and jurors. Principal and surety. Evidence. Venue. Verdict. Waiver. Before Judge HINES. Washington superior court. September term, 1888.

Reported in the decision.

J. A. ROBSON, *pro se.*

O. H. Rogers, solicitor-general, B. D. EVANS, Jr., and R. R. HARRIS, *contra.*

BLECKLEY, Chief Justice.

Robson was indicted, tried and convicted for embezzlement committed whilst he was tax-collector of Washington county. The moneys embezzled were alleged to be taxes due by the tax-payers of that county to the

State, collected by him officially. The section of the code (§4421) applicable to the case reads as follows: " Any officer, servant, or other person, employed in any public department, station or office of government of this State, or any county, town or city of this State, . . . who shall embezzle, steal, secrete, fraudulently take and carry away any money, gold or silver bullion, note or notes, bank-bill or bills, . . . shall, on conviction, be punished by imprisonment and labor in the penitentiary for any time not less than two years nor longer than seven years." A motion for a new trial made by the accused was overruled.

1. There was a demurrer to the indictment alleging that it failed to charge that the accused had the money in his possession, custody or control as tax-collector at the time of the imputed offence. We think the indictment did allege the equivalent of this, as it charged that the money belonged to the State of Georgia for the general State tax due from the tax-payers of the county of Washington to the State for the year 1886, which had been by said Robson, as tax-collector, collected from the tax-payers of the county.

2. Though we have examined the indictment and ruled it sufficient, the question has not been properly made by the record and bill of exceptions. The overruling of such a demurrer is not proper matter for a motion for a new trial. *Griffin* v. *The Justices*, 17 *Ga.* 96; *DeBarry, etc.* v. *Austin*, 76 *Ga.* 306; *Rogers* v. *Rogers*, 78 *Ga.* 688. The bill of exceptions, it is true, does except directly to the ruling of the court on the demurrer. But this comes too late, as time runs against such exception, not with reference to the date at which the new trial was denied, but with reference to the date of the trial, or at all events to the adjournment of the term of the court at which the trial took place. *Daniel* v. *Tarver*, 70 *Ga.* 203. Had exceptions

*pendente lite* been filed, then the point would have been saved, and might have been brought up with the general case after the motion for a new trial was overruled. *Bradley* v. *Saddler* 54 *Ga.* 681.

3. A continuance was moved for and denied. It seems that the accused in open court discharged certain of his witnesses from further attendance, and then applied for a continuance because one of these witnesses was absent. The court, knowing judicially of what had transpired, refused to grant the continuance for that reason. It seems to us that there can be no doubt that the reason was sufficient. Moreover we are satisfied that if what was proposed to be proved by the witness was admissible evidence at all, it was so immaterial that the refusal might well have been put upon that ground.

4. The 44th rule of the superior court, code, p. 1351, requires that all grounds of a motion for continuance shall be urged and insisted upon at once, and declares that after a decision on one or more grounds, no others shall be heard by the court. In *Brinkley* v. *The State*, 54 *Ga.* 374, it was suggested that this rule might, in the discretion of the court, be made to yield so far as to prevent injustice by mistake, inadvertence, surprise, etc. We cannot hold that it was an abuse of discretion not to relax the rule so as to hear a second motion after the first had been determined adversely, the ground of the second being the absence of one of the prisoner's counsel. It was not pretended that the absence was unknown when the first motion was made. The only excuse given was that it was left out by inadvertence or oversight. It was not stated that the absentee was the leading counsel. If he had been such, or if his presence had been deemed very material, it is altogether unlikely that this cause for continuance would have escaped attention in the first instance. Indeed it would

have been the one topic to present itself ahead of everything else, in the mind of one exercising any diligence whatever in preparing a motion for continuance. Granting that the matter was subject to the discretion of the judge, and that, in the face of the rule, he could have considered this new ground had he been so moved in the exercise of his discretion, we see in this record no indication of any abuse or mistaken exercise of such discretion.

5. The panel of jurors having been exhausted without obtaining a full jury, the partial jury selected but not yet sworn were confined elsewhere than in the court-room, and whilst the bailiffs were abroad engaged in summoning another panel, the court proceeded to try another criminal cause. We think there was no error in this. The selected jurors took no part in the proceedings and were not even present. The case is wholly unlike that of *Tribble* v. *Anderson*, 63 *Ga.* 32, in which some of the jurors engaged on a pending trial were charged with another case.

6. During an interval while the trial was in progress, the court, with consent of the prisoner's counsel, the prisoner himself not intimating any objection, dealt with some of the witnesses who had been summoned in behalf of the accused, for their failure to attend promptly in obedience to the process. They were proceeded against for contempt, and the court heard their excuses. This took place during a recess of the court and whilst the jury were not present. Under such circumstances it was surely no error, nor even any irregularity, to hear the excuses of the witnesses; and, so far as appears, this was all that was done.

7. Before the indictment was found, the comptroller-general had issued execution for the taxes due from the collector, and the sureties on the collector's official bond had paid the executions in full; and, as indicated by

some of the evidence, the collector had indemnified the sureties by turning over to them certain notes and conveying to them real estate. The court charged the jury that if they believed from the evidence that the defendant embezzled the sum charged in the indictment, and in the manner charged in the same, he would be guilty of said charge, although a full settlement had been made with the State, and also with the securities on his official bond, before the indictment was found against him. We think this charge was sound law. With or without embezzlement, the State was entitled to its taxes; and discharging the claim as a debt after the money had been embezzled would not cancel the crime. *McCoy* v. *State*, 15 *Ga.* 211; *Hoyt* v. *State*, 50 *Ga.* 325. A note executed by the sureties and payable to the accused was a part of the settlement between them, and its exclusion as evidence was proper, for the same reason applicable to the charge. That the sureties gave their principal a note as a part of the settlement, or to carry out its terms, would not tend to illustrate his guilt or innocence touching the charge of embezzlement.

8. It is contended that the venue of the offence was not made sufficiently certain by the evidence; but we think otherwise. The accused was a public officer of the county of Washington. He collected the money in that county from the tax-payers thereof. His office was there; he resided there; and it is not affirmatively shown that any of the money was elsewhere after he collected it. *Smiley* v. *State*, 66 *Ga.* 754. The venue may be established by circumstantial or direct evidence. *Davis* v. *State*, 82 *Ga.* 205. We think the venue was most amply proved by the evidence in this record.

9. When the verdict was brought into court the accused was at large on bond, and was voluntarily absent.

His counsel being present consented to the reception and publication of the verdict. We see not why the voluntary absence alone would not be good cause for proceeding with this necessary step in the trial. *Barton* v. *State*, 67 *Ga.* 653. It was the privilege of the accused to be present, but its exercise rested upon his will alone. He was under no restraint or constraint by the action of the court.

10. Touching the general merits of the case and the sufficiency of the evidence to warrant the verdict, we content ourselves with quoting from the opinion of the able and impartial judge who presided at the trial, and whose opinion in deciding adversely on the motion for a new trial, has come to us as a part of the record. He says; "I cannot say that the verdict is contrary to the evidence and law of the case. Neither does it appear to be against the weight of evidence. I cannot come to the conclusion that the jury was not justified in saying he was guilty beyond a reasonable doubt. The defendant made the square issue that the funds of the State in his hands as tax-collector were stolen, and not embezzled by him. Was this money stolen by Willie Corneal, or was it embezzled by the defendant? That was the sharp, clean cut issue which the defendant made with the State. There was no middle ground, no allegation of extravagance or reckless expenditure, or innocent appropriation of the State's money with intent to account for it at the proper time, and failure owing to misfortune or miscalculation. In reply to the proposition that the money was stolen, there was evidence that the defendant paid a note of his own with money taken from a pile in or on his desk where he was sitting at the receipt of customs, taking in the taxes of the people. The jury might infer that the defendant used the State's money for this purpose. There was the evidence of several witnesses that the defend-

ant stated he had used the State's money in buying land. There was in evidence his statement that he had used the State's money in electioneering and in living. There was his letter of the 5th of May, 1887, to the comptroller-general, in which he begged to be bridged over until October, offers to convey to that officer eighteen hundred acres of land and pay twenty per cent. interest for indulgence, pleads that he would be ruined if indulgence was not granted him; and yet he does not mention the fact that the State's money was stolen. The defendant kept the robbery secret. From all these circumstances the jury might well infer that the theory that the money was stolen was not true in fact. I would have been glad to have been able to say in my conscience that the evidence failed to show the defendant guilty beyond a reasonable doubt, and thus have been in a position to grant him a new trial; but I cannot so say in good conscience."

*Judgment affirmed.*